No. 17,534.

CAMELLIA CLEANERS, INC. v. S. I. SIEGAL AS UNIVERSAL INVESTMENT COMPANY, ET AL.

(283 P. [2d] 1083)

Decided May 23, 1955.

Mr. DAVID J. MCKEE, for plaintiff in error.

Messrs. DAVIS & LUTZ, Mr. HAROLD POTASHNIK, Mr.

FRED W. MATTSON, Mr. A. B. MATTSON, Mr. FRED W. MATTSON, JR., for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the Court.

PLAINTIFF in error, herein designated as plaintiff, on January 21, 1952, purchased for the sum of $30,000.00 all of the assets consisting of certain personal property and with leases on various premises from a copartnership conducting and operating a dry cleaning business. At the time of the transaction plaintiff borrowed a portion of the purchase money from defendant Siegal in the sum of $10,000.00 and executed a note and chattel mortgage therefor in the sum of $12,500.00, bearing eight per cent annual interest payable monthly, together with $500.00 on the principal. The full balance remaining due and unpaid to be due on the twenty-fourth month. To shorten this opinion and go directly to the crux of this litigation, we deem it unnecessary to detail further than to say that default occurred and defendant transmitted a demand for the payment of the full balance alleged to be $9,829.63 on the note, and upon failure to make the payment, foreclosure would ensue. This notice was given about February 27, 1953; on March 6, 1953, plaintiff ceased the operation of said business; and on the 9th day of March, 1953, delivered all of the personal property located in its plant and stores, together with the keys to the buildings involved, to defendant Siegal. Up to that time plaintiff had paid approximately $3,000.00 and he alleged that he delivered property to Siegal all in the reasonable value of $20,000.00. After a time, he instituted this action for treble damages under section 7, chapter 108, of the 1913 Session Laws of Colorado, which is as follows:

"Section 7. Every person who, for any loan, or fore-

572

bearance, shall have paid or delivered any greater sum or value than is above allowed to be received, may, by himself, or by his personal representative, recover in an action in any court of competent jurisdiction against the person who shall have taken or received the same, or against his personal representative, treble the amount of money so paid or value delivered above the rate aforesaid, together with the costs of the suit to be fixed by the court, provided that such action shall be brought within one year after the date of such payment or delivery."

Defendant answered and made counterclaim; however, the original pleadings are not of particular consequence due to the fact that the parties filed an agreed statement of facts setting forth the issues. Shortly after plaintiff surrendered the property to defendant, defendant in due course took action to have public sale of the property. The day before the sale was scheduled, and on the 25th day of March, 1953, this action was commenced, with a prayer that the sale be enjoined. Thereafter, on May 18, 1953, the agreed statement of facts was filed, and on the same day the parties entered into a stipulation which provided in effect, that the property described in the chattel mortgage be advertised and sold at a public sale to the highest bidder, and thereupon plaintiff dismissed its prayer for injunction. It was further provided in the stipulation that if defendant was the purchaser at the sale, he was required to pay into court only the excess, if any, over the amount due as set forth in the agreed statement of facts, that being the sum of $6,875.00, plus interest at the rate of 12 per cent per annum from the date of the note.

In due course the matter came on for hearing, and after submission of evidence, the court, on the 22nd day of June 1954, entered its judgment on the stipulation, that defendant have judgment on his counterclaim in the amount of $2,575.00, representing return of the principal of the loan made to plaintiff by defendant; and at the

close of plaintiff's evidence, defendant moved for dismissal of plaintiff's complaint, which was sustained by the court; and the court stated in substance that it found that on March 9, 1953, when plaintiff turned over the property and keys to defendant, that the unpaid balance on the note was $6,875.00, and that there was no evidence to support the claim of plaintiff that, at the time of turning over the property and the keys, the value of the property was $23,125.00; therefore there was no evidence sustaining the allegation of overpayment in the sum of $16,250.00; and found that there was no competent evidence introduced as to the value of the property when it was delivered to defendant Siegal, nor as to the value of the property at the time the sale was made in accordance with the stipulation; and further, no evidence to show that the property, if sold piece by piece, instead of a unit, would have brought more money.

The question of value is determinative of this action. If plaintiff's allegations and contentions that the property delivered to defendant exceeded the amount owed, and that defendant was thereby overpaid under the prohibition of the statute, plaintiff at once had the burden of proving that the property so delivered, either on the day of its delivery or the day that it was sold, had the value alleged. Our study of the testimony offered reveals no competent evidence of value offered by plaintiff. To meet this burden of proof plaintiff was called upon to establish a fair market value of the property if such existed. If no market value existed, then it was incumbent upon plaintiff to so prove, which is lacking in this record. Of course, if it was established that there was no market value, then plaintiff could resort to other competent evidence of value; however, the testimony here as to value was remote in that, it was the testimony of a former owner a year or more prior to this transaction. Plaintiff produced a tax accountant in the revenue department of the assessor's office to establish the assessed value of the property and who testified

that he had never seen the items that were taxed and did not know what equipment was in the establishments upon which the valuation of $8,340.00, representing forty per cent of the book entry, was made. The present president of plaintiff corporation felt that a value of $20,-000.00 was not an improper value; however, this did not include two trucks and other items of equipment that had been purchased.

The testimony of the former owner was remote and as against that testimony it is to be observed that the parties had agreed on the amount due and that a sale be had and the property sold to the highest bidder, and in this instance, was less than the stipulated amount owed. There was no evidence of the value of the property at the time of the delivery or the chattel mortgage sale, and further, the testimony of the present president of plaintiff corporation discloses no opinion of the value of the property, but he did testify that on September, 1952, he had attempted to sell the business but had received only one offer, and that offer was not sufficient to pay off the debts. The failure of this witness to testify as to value is an indication that he did not know the value or that the value was not what it was claimed to be.

There being only one issue before this Court, that of value at the time of the delivery of the goods in question or the sale thereof, and a noticeable lack of competent evidence to establish such value, plaintiff has failed to meet the burden placed upon it to sustain the allegations of the complaint, therefore the judgment of the trial court was correct, and accordingly is affirmed.